Cases 1-4-1433, 14-1435, and 14-1436, Pamela Liggett v. Robert Schwartz. Oral argument, 15 minutes per side. Mr. Purack for the appellate. Good morning, Your Honor. I represent Appellant Pamela Liggett in these consolidated appeals. I'd like to reserve five minutes for rebuttal. Your Honors, we're here today on three appeals from the bankruptcy court, which I've referred in my briefs as the claims order, the confirmation order, and the dismissal order. Given the time constraints today, I'd like to highlight some of what I believe to be the key issues in these three orders. I'd also obviously be more than pleased to answer any questions that the court may have. Addressing the claims order first, Your Honors, I'd like to respectfully submit that the bankruptcy court erred in finding that Ms. Liggett did not have a property interest in 50% of the IRA pursuant to the divorce judgment. Pursuant to the Supreme Court case of Grogan v. Garner that I cited in my brief, the bankruptcy court was duty-bound to apply Michigan law to determine whether or not you harmed. I mean, you ended up with money awarded to you that respect your client's interest in the IRA under the divorce decree. I mean, where does this argument get you? There's a statutory conversion claim, Your Honor, that can be raised under MCL 600.2919A. It deals with embezzlement or conversion. Under that Michigan statute, which applies in this particular case to the allowance of her claims. Well, does that? OK. Let's say there is such a statute. Let's say the funds were converted under Michigan law. Apparently, what matters to you, I mean, I'm trying to cut through all the voluminous stuff. I mean, the only reason that matters to you is that you want treble damages, not what you got. Right? We're entitled to receive treble damages and attorney's fees, Your Honor. So if that's right, are treble damages your entitlement as a matter of right under the conversion statute? That's my position, Your Honor, yes. OK. As long as we find a conversion. As long as the conversion is fair. Isn't the statute in May terms? It is. Isn't there some authority to the effect that the award of treble damages is discretionary? That is absolutely correct, Your Honor. There is a split of authority in Michigan right now dealing with whether or not that is mandatory or discretionary. So it would have been within, so it may or may not get you anywhere to argue on this claim, right? Ultimately, that will be the bankruptcy court's decision is to determine whether or not that statute does afford a strict entitlement to it or whether it's discretionary. And once it's presented with all of the evidence dealing with what actually happened back in 2009, whether or not we should be entitled to it. The bankruptcy judge did not make any of those determinations, Your Honor. None whatsoever. The record is absolutely crystal clear in that respect. It's clear, at least, that the bankruptcy judge did not accept your characterization of what occurred. I mean, it's obvious that he recognized that certainly your client was entitled to what she was entitled to under the divorce settlement. But it also appears clear that the bankruptcy court was unconvinced that Mr. Schwartz had done anything intentionally or with some intent beyond just the intent anybody has in dealing with their affairs to do whatever they do at a given point in time. I would certainly agree that the bankruptcy court gave the impression that there was nothing at that stage that indicated an actual intent to harm Ms. Liggett or her property interest. But the court was doing that based upon what I believe to be a mischaracterization of the record dealing with the motion for sanctions in the Oakland County Circuit Court case applying collateral estoppel to the issue. The bankruptcy court never took any type of evidence, okay, in connection with what actually happened in 2009, the events leading up to his actual taking of the IRA account, his liquidation of it, and his use of those funds to pay his own taxes. The only thing that was really of record in the circuit court of which the bankruptcy court relied on, okay, deals with the fact that he defended those enforcement motions in 2010 on the grounds that he couldn't remember what he did with the IRA. The Oakland County Circuit Court did agree with that position, okay, but that's not the same issues that we're talking about here. And I've explained that very thoroughly in my brief, okay. Collateral estoppel has to be applied pursuant to Michigan law. Michigan law, it's very strictly construed, okay. The identity of issues have to be the same and they have to be raised in the pleadings. That sanctions motion specifically excluded on its face any issue with respect to conversion or embezzlement. But you're still back to the circumstance where the conversion claim doesn't entitle you to triple damages. Well, I disagree with that. And it also still, even under the other Michigan court appeals finding, okay, or holdings, it still has to have a thorough analysis and we're entitled to that. Okay, you just can't say like the bankruptcy court did here, okay, that, oh, the divorce judgment never gave her a property interest. So I don't have to consider that issue. How many hearings have you had on this? Excuse me? How many hearings have you had where you've made the argument that there was a conversion? I mean, and the record was kind of... It seemed like there was at least five or six before the divorce court. And there was probably more than that before the bankruptcy. There was no, none of those proceedings were before the Oakland County Circuit Court. Okay, the only thing that was before the Oakland County Circuit Court was trying to get the IRA in the first place. They'd never brought, we never brought any type of conversion claims before that court. So I want that to be crystal clear. But you made the conversion argument time after time to the bankruptcy court and then to the district court. The problem that we had with respect to that, Your Honor, why we had to keep raising this is because of the unique procedural posture that this case was put into because of the filing of the chapter 13, the dismissal of the chapter 13, the conversion of the case to chapter 11. Unfortunately, because of the conversion that we had to keep on going that I would have loved to have been able to go immediately to the district court on an appeal out of the chapter 13 and then to this court without having to go through those stages. But we know what the district court did and it's April 27th, 2012 order. So what's the answer to Judge Gwinn's question? As far as- How many hearings? There were hearings, okay, which we asked the court to consider. I think we're looking for a number. I don't know, Your Honor. What's the rule if you argue 10 times that there was a conversion and you're entitled to three times the actual damages and nobody ever agrees with you, at some point, can't we consider that that argument's been considered and put aside? Well, no. I mean, it certainly is one that should be considered on appeal. Okay, and that's what I'm asking the court to do is that the court's refusal to consider the entitlement of tribal damages was an error in this case. That's the whole crux of the matter because the court never got to whether or not he actually intended. But you made that proof of claim and in the proof of claim, you specifically asked for triple damages. We did, but the court didn't deny it on the merits. The court did not deny it on the merits. It allowed the claim though for the actual damages. That's true because the court did not deny it on the merits because the court specifically found and limited its holding to its erroneous conclusion of law that the divorce judgment never gave Ms. Liggett a property interest. I'm sorry. What I'm trying to indicate or ask about is I thought you made a proof of claim that was for triple damages. And I thought the judge, the bankruptcy judge, ultimately turned that away and instead allowed the claim for one third of the actual damages. And if that's true, can't we read from that that the court turned away your claim for conversion or for triple damages, even if it was converted? Your Honor, you're absolutely right that we filed a claim for triple damages and that the court disallowed that claim with respect to triple damages and attorney's fees. But it did so, and I can't emphasize this enough, it did so solely because it found that Ms. Liggett did not have a property interest under Michigan law with respect to that IRA that could be converted or embezzled. The transcripts are absolutely crystal clear about that. And from that, what import do you take? Would that help you? It helps me because we do have a property interest in that IRA. He did take it. He was wrong to say you don't have a property interest. She was wrong, yes. I'm sorry. Yeah, she was wrong to say that because the Michigan statutes are very clear. These are divorce statutes? Yes, yes. Let me go back. They're conversion statutes. No. You can't find a bunch of contacts. No, no. The Michigan statutes that I'm referring to that confer a property interest with respect to this divorce judgment specifically say that any award in a divorce judgment has the same force and effect as if that party who received it got a bill of sale. That's saying you've got a property interest. On the factual background though, I don't understand how the bankruptcy judge said that she had no interest in the IRA. I thought she gave her 70,000 or 66,000. What the bankruptcy judge did to avoid the whole argument about statutory conversion said that you have a contract right under the divorce judgment. That's what she held. You have a property right, and that's a big distinction. There's a huge distinction, and that's why everything that she did from that point on was fundamentally flawed. Okay, I think we've gotten your point unless someone has an additional question for you at this point. Thank you very much. We'll hear from Ms. Bass. Good morning, Your Honors. Michelle Bass on behalf of Robert Schwartz, the respondent. Turning to the claim issue. Could we start where counsel left off? Yes, absolutely, Your Honor. Because that's, in his analysis, that mistake there in deeming this a contract rather than a property right skewed the entire process therefrom, right? Yes. That's his argument. So would you give us your best response to that? Absolutely, Your Honor. Whether or not the divorce judgment afforded Ms. Liggett a 50% property interest is irrelevant to this determination. Well, first, there's law that counsel cites. The law in Michigan. That says it is a property interest. The Michigan compiled laws cited by counsel, 552-401 and 552-19, are not mentioned anywhere in the bankruptcy record. They are not in the adversary complaint. So this a waiver argument you're making? Well, my argument... To say it doesn't matter, you're saying that it was never mentioned in bankruptcy. That is correct. It was never mentioned on the bankruptcy record. It was brought up in the district court appeal. So what's the import of that? Give us the bottom line first. I believe that whether or not it's a property interest doesn't matter here because the bankruptcy court is given this... In bankruptcy, property interests versus contract interests do matter, don't they, in bankruptcy? Yes, it does, Your Honor. But the bankruptcy court is afforded the authority to determine the allowability and amount of all claims entered in a bankruptcy case. And that's a rule out of the Sixth Circuit and INRI's CSC Industries. Now, whether or not it's a property interest doesn't make a difference to my position because even if statutory conversion were proven, which it can't be, the merit of her argument for statutory conversion, her complaint doesn't rise to the level that would allow the court to even hear the statutory conversion argument. Her complaint is void of the elements necessary to prove statutory conversion. She didn't plead it properly in the 12 hearings that the bankruptcy court held on this issue. And she didn't argue for the Michigan statute in her adversary complaint in the bankruptcy court. The only Michigan statute that was raised in her complaint was 600.2919A, only for the purpose, the sole purpose of receiving an enhanced award, including treble damages and attorney's fees, which would all be post-petition in the bankruptcy. So she did not allege the elements of the state claim. This is your position. I'm just restating. That is my position, yes, Your Honor. She rather pled the remedy to which she would be entitled if she had established the elements of the state claim. Now, what's the problem, I mean, is there a problem with her making this state claim in the context of an adversary proceeding in bankruptcy court? What she did was, I don't see it as a problem, but I see it as a different issue. What she did in the bankruptcy context was she raised an adversary proceeding for non-dischargeability of her claim, based on- Which is the more natural claim one would make in the bankruptcy. And the bankruptcy court decided that issue. Correct. So if we want to deal appropriately, in your mind, with this conversion claim, we ought to go back and look at the filings in the bankruptcy court and see what the precise parameters of the issue before the bankruptcy, issues before the bankruptcy court were, is that- Certainly, I would- Is that right? Well, that is correct. The adversary proceeding complaint that is at issue before your honors did not raise these state statutes. It only raised trouble damages. Can you tell me one more thing quickly, hopefully, and then you can move on with whatever you wanted to say. Sure. What are the elements of a conversion claim under state law? Under state, under the law that council has raised, it is the taking of property wrongfully from another party and using it, putting it towards their own use. Now- And he says that he wasn't, he didn't get to put on proof of what, but the wrongful use could be proven, or the use could be for own, the use for Mr. Schwartz's own purposes could be proven. His position, I suppose, would be that wrongfully could be proven. That is council's position, but- Would wrongfully be, could wrongfully under state law just mean not in accord with the divorce judgment, or would it have to mean some additional level of integrity? I think it would mean wrongfully that it has violated her right to the asset, if it is, in fact, hers. And since the bankruptcy or the divorce court granted, as I understand it, the wife here, the 50% interest in his, this particular IRA, that, we're told by council, was a trust obligation. He didn't have any ability to do anything with that. 50% share, except transfer ownership of it to her. And that's precisely what he didn't do. And that's his basis for saying it's converted. That, that- If it's a trust and it's hers, he takes it, sells it. If it's a trust, that is the key issue here. That's the argument. It is, there was no trust relationship here. There was no, there could have been no breach of fiduciary duty whatsoever. Is that required for a conversion? That's not required for a conversion. It's required for breach of fiduciary duty, which is another one of the arguments raised in the- It's a separate claim, not conversion. Not conversion. All right. I thought that's how he gets to conversion. Well, in terms of conversion, it has to be, conversion is the wrongful taking of someone else's property or the- Wrongful because it was- Or it's been entrusted into someone's hands or someone's hands- By the divorce court. It's lawfully come. But this asset was always rightfully within Mr. Schwartz's possession. It was his asset and it was the judgment of divorce that granted her an award of 50% of it. Not dollars, not dollars. It said transfer it. So she had all the tax benefits that came. The terminology in the judgment of divorce was- Yeah, this was- They shall split evenly all proceeds of all IRA accounts. Not, there is no language that he is required to transfer 50% to her. She was not required to liquidate them immediately as I- No, there was no language to that effect. Well, can you, maybe you can talk about what you wanted to talk about now that we've- I'm happy to take all questions that your honors have, but I do respectfully request that the court affirm the orders out of the bankruptcy court that the adversary complaint was properly dismissed by the bankruptcy court, that the allowed amount of her claim for one half of the IRA was determined in accordance with the terms of the judgment of divorce, and that the, more importantly, that the chapter 11 plan of reorganization was properly confirmed and complies with all provisions under title 11. Let me ask on somewhat of a different question. Was the amount computed correctly? In specifically, were certain of the IRA securities, did they have a dividend reinvestment? And was that taken into account when the final determination was made dividing this? It's a good question, your honor. We were given the opportunity to put forth our versions of how the claim should be determined, taking treble damages and attorney's fees out of the equation. I produced hundreds of pages of documents following this IRA over the course of years from when it was in one bank and the bank merged to another subsidiary, and then his other IRA from another prior employer was contributed, and I did not include the reinvestment of dividends. I did not see it on the paperwork that my client provided me with. I filed three volumes of evidence. Was it included, the reinvestment? It was not included. How much is that roughly? That would be roughly $3,500, which I attempted to split with counsel, not counsel who is seated here presently today. Ms. Liggett has separate bankruptcy counsel, and counsel was unwilling, unwavering. But didn't the ultimate amount awarded exceed the amount of the reinvested dividends? Is that correct or incorrect? No, it did not. I think the amount that would have included dividends might have been 64,000 and change, and the amount that was determined was to be 61,000 and change. I did offer to, the bankruptcy court urged... How much is this going to be paid in installments? It is paid in monthly installments of $1,500 a month pursuant to the terms of the Chapter 11. Does the total amount paid at the end of the day, did they agree to some, is there some interest component? There's no interest component here. It's a general, it is a priority because it is a debt arising out of a state court divorce judgment, priority unsecured claim. Interest is not applicable here, and the bankruptcy court specifically ordered that she is not to receive any additional interest. The amount of the claim was determined to include interest from the time of liquidation to the time of the confirmation of the Chapter 11 plan. But interest on top of that was expressly excluded by the bankruptcy court. Is that typical? Interest, it is typical if it's not a 100% plan, which this is not a 100% repayment reorganization plan. Wait, what period, go ahead. We're led to believe by the briefing for the spouse, the wife, that bankruptcy treats divorce, the benefits to have been derived from divorce differently than other claims, other assets, and that they are given a priority and that we're told she shouldn't have to wait for this payment, then that should, in fact, disqualify this bankrupt from discharge. The distinction, Your Honor, is that the divorce-related debt is a priority, meaning it's non-dischargeable. The entire debt must be satisfied through the course of the plan. The only incident in which a debt would be entitled to immediate repayment would be if the absolute priority rule were invoked, which in this case it's not because her claim was not impaired. She was a creditor who was entitled to the full amount of her allowed claim, and the claim was allowed and determined by the bankruptcy court. So she's objected to the plan. All right, you answered it. Go ahead, Judge Givens, please. Okay, the reason I thought that it was a greater amount was because, I must be mistaken about some part of this, I thought that the length of time he was to pay her was five years. The length of his reorganization plan is five years, but it is not going to take the full five years. Okay, thank you. I thought he was gonna be paying 1,500 for five years, which is $90,000, which is- Is that wrong? That he is only paying the amount of her claim over until it's- So he'll, at the end of the day, have, he will only have paid the 61 whatever. In actuality- And it'll be done before five years. That is correct, Your Honor. And in actuality, following confirmation of the Chapter 11 plan, I did file a motion for set off of the claim, which, when you look at all of the arbitration awards, my client was actually entitled to greater attorney's fees and greater costs in the divorce venue over Ms. Liggett. And Ms. Liggett did not object or respond to the motion for set off. And the claim was set off by, I wanna say, $30,000, $35,000. So she has been already paid in full. She's been paid her $38,000 claim. So if anything, under putting aside the question of travel damages or attorney's fees, what they would be quibbling about is some small amount involving reinvested dividends. Yes, Your Honor, that is correct. But in the end, she didn't get even 60. No, she- She got less than 60 because she had to pay your fees. Correct, which was an order out of the state court. If Your Honors have anything else for me. Do we have more questions for her? All right. Thank you very much. Thank you, Your Honors. I'd like to address just a couple of the questions that you had put to opposing counsel and offer some, hopefully, clarification. There are two processes that were running in this particular bankruptcy case. One was the objection to the proof of claim that was filed, which clearly delineated the right to travel damages under the Michigan statute. Okay, that was put forth in the proof of claim. The claim was itemized and filed. The process then is to object to that proof of claim. It's considered to be a contested matter, which is treated like a lawsuit where we have the rights to discovery and those types of things. They can file a motion for summary judgment or essentially like a motion, a Rule 12b-6 motion. That's one aspect of the case. The other deals with an adversary proceeding to determine what portion, if any, of that claim is entitled to non-dischargeability status. In that particular case, there are certain pigeonholes that you have to meet, okay, in order to have your claim accepted from a discharge. With regard to the proof of claim, was that litigated, in fact, in this case? It was summarily disposed of by the bankruptcy court based on the bankruptcy court's sole ruling that Ms. Liggett never acquired a property interest in that IRA pursuant to the judgment of divorce. That was the be-all and end-all to that one. Okay. She had argued that the divorce decree itself had said that the amount was to be, I may paraphrase wrongly, but I thought she suggested that the divorce decree said something to the impact of the value of it was to be split. The divorce decree awarded her a 50% interest in each of his 401k plans and IRA and to be split. Or did it say that she was to receive half the value? No, she was to receive half of the account intact. She was supposed, they were supposed to- That's your position, but it sounds like, is it in the document? Yeah. Yeah, it's in the judgment of divorce. How can counsel have a completely different view on that? I have no clue because it says, it's really clear in the divorce judgment. Each of these retirement accounts are to be evenly divided with Ms. Liggett receiving her 50% share. And with respect to any of those- So 50% share sounds like it could be liquidated and just get the value. No, they were supposed to be divided. That's why they had- Okay, is that typical? The divisibility of these- Yes, it is. That'll remain intact and that's always the case? Yeah, for tax advantages and things like that. Because that's why these qualified domestic relations orders are prepared with respect to 401ks and the like. Luckily with IRAs though, you don't need that. I'm trying to save you a little time here. Assuming you're correct, that it is crystal clear that it ought to have been somehow divided. There must be a method by which the intact portion goes to the other spouse. Assuming you're right about that, why did you lose all along on this idea? I don't know. I don't know. It's perplexing because the Michigan statute dealing with- But I guess the point is the upshot that you, what damage has your client suffered there from? Now we're back to the conversion and my gosh, we get triple damages. We're back to that. That's how you're harmed. And that's where I want to make it really clear that there's a distinction between the allowance of a statutory conversion claim, visa fee, a determination as to what portion of that claim is non-dischargeable. Because they're different standards. The statutory conversion claim is a relatively simple one and the intent of the tort fees are at the time he took that property as to his intent to injure Ms. Liggett, that's not relevant. It would be relevant to whether you were entitled to triple damages or not under Michigan law because it would go to the exercise of the district court's discretion. It might not be relevant to whether you'd establish the claim, but wouldn't that be accurate? I think that would be accurate if you take that line of cases right now that say it is discretionary. I don't agree with that. Okay, I think the other two Michigan court cases that say it is an absolute should be applied. There was a state bar journal article recently written that makes a good analysis of that. But again, the judge never even got to that. The judge just said, no property interest, no deal. And getting back to- It all goes back to who's right about the divorce language. I think it depends upon how you have to take into consideration the Michigan statute. Because the divorce, I think the divorce judgment is plain and ambiguous when it comes to that. There's to be split and each party receives their share. And there's the typical provision- Is that the language, that it's to be split? Yes. That sounds like dollars. That sounds like dollars, value. No, because it goes on to state that they have to prepare quadros to accomplish that. Okay, and things like that. What happened with the others was she was, wasn't she paid upon their liquidation? Or did she end up with IRAs? Excuse me? The others, the earlier ones. They were split when they become eligible. She has her own now separate 401k out of that. And she will be able to draw on that as any other eligible beneficiary would be. Yeah, that's how that works. Are there further questions? May I, I'm sorry, I know that I'm out of time, but this was a pretty complex case. And I just wanted to make one brief comment about the confirmation of the plan. One sentence. Thank you very much. This court just recently issued an opinion. It's the case of, let's see. Ice House. I kind of lost my sight. I apologize. We'll find the site. Yeah, it's a 2014 case and it, and it confirmed that an individual chapter 11 debtor has to comply with the absolute priority rule in the event that an objecting unsecured creditor class who holds an impaired claim like my client does objects. And so I think that case is worth reading. And I apologize for not being able to give you the site right away. Okay. Thank you very much. We thank you both for your argument. We'll consider the case carefully. And since there are no other cases to be argued, you may adjourn court.